UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALI ABOUBAKER,

       Plaintiff,                         Case No. 11-13001

v.                                  HONORABLE DENISE PAGE HOOD

COUNTY OF WASHTENAW, DAVID
SHIRLEY and RICHARD FERRELL,

       Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SETTING STATUS CONFERENCE DATE

## I.    BACKGROUND

On July 13, 2011, Plaintiff Ali Aboubaker ("Aboubaker") filed the instant suit against Defendants County of Washtenaw ("Washtenaw County"), David Shirley ("Shirley") and Richard Ferrell ("Ferrell"). An Amended Complaint was filed on January 3, 2012 alleging twelve counts: Discrimination on the Basis of Race/National Origin, 42 U.S.C. § 1981 (Count I); Retaliation, 42 U.S.C. § 1981 (Count II); Violation of Equal Protection Clause, 42 U.S.C. § 1983 (Count III); First Amendment Retaliation, 42 U.S.C. § 1983 (Count IV); Discrimination on the Basis of Race/National Origin, Elliot-Larsen Civil Rights Act (Count V); Discrimination on the Basis of Religion, Elliot-Larsen Civil Rights Act (Count VI); Retaliation, Elliot-Larsen Civil Rights Act (Count VII); Hostile Work Environment, Elliot-Larsen Civil Rights Act (Count VIII); Discrimination on the Basis of Race/National Origin, Title VII, County of Washtenaw Only (Count IX); Discrimination on the Basis of Religion, Title VII, County of Washtenaw Only (Count X); Retaliation, Title VII, County of Washtenaw Only (Count XI); and, Hostile Work Environment, Title VII, County of Washtenaw

Only (Count XII).

Aboubaker is an African American of Tunisian national origin.  He is a devout Muslim who observes daily afternoon prayers, the weekly Friday congressional prayer and keeps a beard. Aboubaker received a degree from the College of Petroleum in Tripoli, Libya.  He also received two associate degrees in 1983 in mechanical engineering and mechanical engineering technology from Kalamazoo Valley Community College in Kalamazoo, Michigan.  Aboubaker obtained a general education Bachelor's degree from Western Michigan University in 2006, with a focus on the area of engineering graphics.  He also has a heating and cooling certificate from Washtenaw Community College.  (Aboubaker Dep., pp. 12-13)

Aboubaker has been employed with Washtenaw County since 1991 holding various positions, including bus driver, high speed copier operator, mail courier, computer operator, skills trade assistant, maintenance tech I, maintenance tech II, and warehouse clerk.  Aboubaker was a member of AFSCME Unit B Union.  (Aboubaker Dep., pp. 13, 17, 101)  As a Union employee, Aboubaker is to be given first preference, based on seniority, when applying for an open position or promotion within Washtenaw County.  (Resp., Exs. E-F)

In August 2004, the Washtenaw County Facilities Department underwent reorganization, reclassifying positions, such as Skills Trade Assistance I, II or III with new tiered positions of Maintenance Tech ("Tech") I, II or III.  (Aboubaker Dep., p. 82)  Aboubaker was categorized as Skills Trade Assistant II, which he asserts is equivalent to a Tech II.  (Aboubaker Aff., ¶ 5)  As a Skills Trade Assistant II, Aboubaker was responsible for repair and maintenance of buildings, plumbing systems and HVAC systems and troubleshooting, repair and new installation of electrical and mechanical systems in all County owned and leased buildings as needed.  (Resp., Ex. M)

In order to reclassify to the new tiered Tech positions, an employee had to meet certain performance test scores. Tech I required a score of 75 and Tech II required a score of 85. (Resp., Ex. G) There were two parts to the test. The first part was a combination of multiple choice, true and false and written questions and the second part was a practical Skills Test consisting six parts. (Resp., Exs. G, H) The Washtenaw County Defendants assert that Aboubaker failed the test on September 9, 2004 because he walked out of testing, which is denied by Aboubaker. (Aboubaker Aff., ¶ 6) The Washtenaw County Defendants claim that Aboubaker scored zero on the practical scores for the carpentry and electrical sections. Aboubaker asserts he completed the entire test and that it would be impossible to score zero on the test. (Aboubaker Aff., ¶ 6; Resp., Ex. P) Aboubaker claims that he was never provided with a copy of the actual scored test, but was simply told he failed the test. (Aboubaker Dep., pp. 37, 85, 100) Aboubaker asserts that he was not given accommodation in taking the second test, including larger print for the test, answer sheet and preparation materials, even though others received accommodations. (Resp., Ex. Q)

In 2005, co-worker Lee Scribling, an African-American, filed a discrimination complaint against Shirley, a defendant in this case. Aboubaker was interviewed in an internal investigation, asserting that he believed there was racism in the Facilities Department. (Resp., Ex. V) Aboubaker believes that because of his statements as to Shirley, collaborative retaliatory campaign against him began, resulting in his wrongful termination. Retaliatory actions included failing to provide Aboubaker with training opportunities to prepare for the test, even though the same were being offered to co-workers. (Aboubaker Dep., pp. 83-84) Aboubaker claims that his test score was manipulated demoting him from Tech II to Tech I in February 2006. (Aboubaker Aff., ; Resp. Ex. AA) Aboubaker asserts that the discrimination and retaliation actions include Aboubaker's inability

to observe afternoon prayers and Friday prayers, such as scheduling meetings during these times. (Aboubaker Dep., pp. 45, 51, 53-56)  Aboubaker states that since his statement in 2005, his performance evaluations have taken a dramatic turn for the worse, including statements that he was incompetent.  (Resp., Exs. Y, Z)

In January 2007, disciplinary action were taken against Aboubaker for failing to restock materials for snow removal, which Aboubaker claims was not true because the supply had run out and the delivery had not arrived.  (Resp., Ex. CC)  Aboubaker was placed on a one week suspension without pay in February 2007 for failing to show up for work early and failing to respond to telephone calls from his supervisor.  Aboubaker claims he was asleep when he was called and that he was seen at work at 7:15 a.m., even though he was not scheduled to work until 8:00 a.m.  (Resp., Ex. CC)  Aboubaker was placed on a two week unpaid suspension in December 2007 for failure to attend a meeting, that his work cell phone voicemail was full and because a county salt truck was malfunctioning.  Aboubaker claims the meeting was scheduled during his prayer time in the afternoon.  (Aboubaker Dep., pp. 45, 51)  Even though Farrell had knowledge of Aboubaker's request to have Fridays off to attend prayer, Farrell ignored this request and scheduled Aboubaker to work during Friday prayers until the Union representative chastised Farrell.  (Resp., Ex. D)

In January 2008, Aboubaker was reassigned and relegated to the warehouse, as a Warehouse Clerk, which was a menial task position.  (Aboubaker Dep., p. 101; Resp., Exs. G and DD) Aboubaker requested a transfer to another position–the Drain Inspector position–on April 29, 2008. (Resp., Ex. EE)  Aboubaker was the only Union employee applying for this position, but was denied for the reason that Aboubaker did not meet the minimum requirements for the position, which Aboubaker claims is not true and that he fulfilled the requirements.  (Resp., Ex. HH).

On June 30, 2008, Aboubaker filed a discrimination and retaliation claim before the Equal Employment Opportunity Commission ("EEOC").  (Resp., Ex. C)  Aboubaker's employment was terminated on July 17, 2008 due to alleged insubordination.  (Resp., Ex. JJ)  The EEOC determination indicated that there was reasonable cause to believe that Aboubaker had been subjected to discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended.  (Resp., Ex. LL)  Washtenaw County's Human Resources and Labor Relations Director, Diane Heidt, did not further investigate this determination claiming she was not required to conduct such an investigation.  (Heidt Tr., p. 10)

This matter is now before the Court on the Washtenaw County Defendants' Motion for Summary Judgment under Rule 56 and to Dismiss under Rule 12(b)(6) of the Rules of Civil Procedure.  A response and reply have been filed.  Oral arguments were held on the matter.

## II.    ANALYSIS

### A.    Standard of Review

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted).  Although not overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard."  *Id.* at 563.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570.  A claim has facial plausibility when the plaintiff

5

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion–even if that conclusion is cast in the form of a factual allegation. *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B.    42 U.S.C. § 1983 Claims

### 1.    Equal Protection Claim, Count III - Washtenaw County

The Washtenaw County Defendants seek to dismiss the retaliatory Equal Protection Claim in Count III asserting that there are no claims of an unconstitutional act because Aboubaker fails to allege any policy or custom of retaliation by the County. Aboubaker's response does not specifically address the policy or custom argument although he agrees to dismiss Defendant Washtenaw County.

In order for a municipality to be liable under Section 1983 there must be some evidence that "execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). "[A] municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. Generally, the doctrine of *respondeat superior* has no application in a § 1983 claim absent an allegation that the defendants were following the government's policies or customs. *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982). Rather, "the touchstone of the § 1983 action against a government body is an allegation that official policy

7

is responsible for a deprivation of rights protected by the Constitution." *Monell,* 436 U.S. at 690.

The Supreme Court has indicated that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986). However, "an 'official policy' is one adopted by someone with 'final authority to establish municipal policy *with respect to the action ordered.*' " *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.,* 926 F.2d 505, 515 (6th Cir.1991) (quoting *Pembaur,* 475 U.S. at 481) (emphasis added). In other words, "[l]iability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy." *Id.* A municipal employee is not a "final policymaker" unless his decisions "are final and unreviewable and are not constrained by the official policies of superior officials." *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir.1993).

Upon the Court's review, the Amended Complaint fails to allege any facts that Washtenaw County had policies and custom of discrimination or retaliation. Aboubaker admits in his response that Washtenaw County should be dismissed. Aboubaker's allegations as to Washtenaw County in Count III are dismissed.

### 2.     Equal Protection Claim, Count III - Individual Defendants

The Court will address the equal protection claim as to the individual Defendants in the discrimination analysis below. The Fourteenth Amendment equal protection clause requires that a plaintiff must demonstrate that similarly situated individuals were treated differently and this difference was based on invidious discrimination. *Nordlinger v. Hahn,* 505 U.S. 1 (1992). "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated

without any rational basis for the difference." *Tri-Health, Inc. v. Board of Commissioners,* 430 F.3d 783, 788 (6th Cir. 2005). Claims of employment discrimination under § 1983 must be analyzed using the same analytical framework applicable to Title VII actions. *Weberg v. Franks,* 229 F.3d 514, 522 (6th Cir. 2000).

### 3.    First Amendment Retaliation Claim, Count IV

The Washtenaw County Defendants argue that Count IV should be dismissed because the First Amendment retaliation claim fails to state an actionable claim under Section 1983. Aboubaker responds that he has stated a valid First Amendment Retaliation claim.

To establish a First Amendment retaliation claim, a plaintiff must prove three elements: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000). If the plaintiff can establish the three elements of his First Amendment retaliation claim, the burden of persuasion then shifts to the defendants, who must show, by a preponderance of the evidence, that they would have taken the same action even in the absence of the protected conduct. *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001)

To demonstrate that a plaintiff was engaging in constitutionally protected speech, he must show that his speech touched on matters of public concern, and that his interest in commenting upon matters of public concern outweighs the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Id.* "Whether an employee's

speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). Speech involves a matter of public concern when it involves "any matter of political, social, or other concern to the community." *Leary,* 349 F.3d at 899. This type of speech must be differentiated from a public employee's speech that involves matters of personal interest which are not protected. *Id.* A federal court is not the appropriate forum to review the wisdom of a personnel decision taken by a public agency in reaction to the employer's behavior. *Connick,* 461 U.S. at 147 (1983). While "the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs," it does protect speech regarding any "matter of legitimate public concern," *Id.* at 145, 149. In cases involving employee speech, the court must engage in a two-part analysis. First, the court must determine whether the speech is related to a matter of public concern. If the commentary related only to matters of personal concern, the Court's inquiry would be, in most circumstances, at an end, and the plaintiff's claims should be dismissed. *Connick*, 461 U.S. at 147 ("We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."). If, however, the court determines the speech involved is a matter of public concern, the court then must perform a balancing test to determine whether the government's interest in the efficient and effective provision of government services outweighed the employee's interest in speaking upon that particular matter. *Id.* at 150-54; *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). Speech that tangentially touches upon matters of political, social or other concern to the community

will not rise to the level of protected speech if it is made as an employee addressing matters of only personal concern, rather than as a citizen addressing the community agenda. *Connick,* 461 U.S. at 147. Certain speech may be "mixed speech," which involves both personal and public matters. *Bonnell v. Lorenzo*, 241 F.3d 800, 812 (6th Cir.2001) (recognizing that the First Amendment protects speech involving "mixed questions of private and public concern, where the employee is speaking both as a citizen as well as an employee"); *Perry v. McGinnis*, 209 F.3d 597, 606 (6th Cir.2000) ( Because the speech involved how the state agency demanded that hearing officers find 90% of inmates guilty, this speech served to ensure that the state agency was operating in accordance with the law and such speech concerns public matters.).

In this case, Aboubaker's speech, the filing of an EEOC complaint regarding his discrimination and retaliation claims, concerns a private concern as an employee. The Court's review of the facts alleged in the Amended Complaint does not show that Aboubaker engaged in speech of public concern as a citizen. Aboubaker's complaints to the EEOC and statements regarding discrimination involved his status as an employee. Aboubaker's act of filing complaints before the EEOC does not rise to the same level as the speech in *Perry* where the employee complained of how the employer demanded hearing officers to find 90% of inmates appearing before the officer guilty. The First Amendment Retaliation claim under Section 1983 in Count IV must be dismissed.

## C.   Discrimination Claims of Race/National Origin and Religious Discrimination (Counts I, V, VI, IX and X)

The Washtenaw County Defendants seek dismissal of Aboubaker's discrimination claims under 42 U.S.C. § 1981, ELCRA and Title VII set forth in Counts I, V, VI, IX and X. In response, Aboubaker responds there are genuine issues of material facts as to the discrimination claims.

11

Courts have held that the same standards in analyzing discrimination claims under 42 U.S.C. § 1981, Title VII and ELCRA are the same. *Lowrey v. Xerox Corp.,* 229 F.3d 1152, 2000 WL 1140522 *3 n. 2 (6th Cir. 2000); *Amini v. Oberlin College,* 440 F.3d 350, 358 (6th Cir. 2006).

### 1. *Prima Facie* **Case**

Under the burden shifting approach developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972), a plaintiff must establish a *prima facie* case and create a presumption of discrimination by showing by a preponderance of the evidence: (1) that he belongs to a protected class; (2) that he was subjected to an adverse employment action; (3) that he was qualified for the job; and (4) that he was treated differently from similarly situated employees from a non–protected class. *McDonnell Douglas*, 411 U.S. at 802; *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995); and *Wilcoxon v. Minnesota Mining & Mfg. Co.*, 235 Mich. App. 347, 361 (1999). Alternatively, a plaintiff could establish a *prima facie* case by presenting credible, direct evidence of discriminatory intent. *Terbovitz v. Fiscal Court of Adair County*, 825 F.2d 111 (6th Cir. 1987).

If a plaintiff proves a *prima facie* case, the burden of persuasion shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802. Once the employer carries this burden, the burden then shifts back to plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.*; *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991). The plaintiff may meet this burden by showing: 1) that the stated reasons had no basis in fact; 2) that the stated reasons were not the actual reasons; or 3) that the stated reasons were insufficient to explain the employer's action. *Wheeler v. McKinley*

12

*Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991).  The burden of persuasion always remains, however, with the plaintiff.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

For purposes of the motion only, the Washtenaw County Defendants acknowledge that Aboubaker meets the first two elements, but argue that he does not meet the third and fourth element of a *prima facie* case.  Aboubaker responds that he meets the third and fourth elements--that he was qualified for the positions and that he was treated differently than others.

### a.      Qualified for Drain Inspector Position

Washtenaw argues Aboubaker was not qualified for the drain inspector position.  Aboubaker responds that he has the equivalent experience for the position, yet he was not allowed to interview for the position.

Washtenaw County's Director of Field Services, Jeffrey Harris, testified at his deposition that a Tech I, II, or III would have the minimum experience for the drain inspector position, depending on the individual's experience.  (Harris Dep., p. 24) Relevant experience for the position could include:  working with a chain saw, helping to maintain, replace and clean water pond pipes, unclogging storm drains, and working in trenches.  (Harris Dep., pp. 25, 27, 30) A Union employee possessing relevant experience would have the first preference for the position.  (Harris Dep. p. 32) The Drain Inspector Job Summary posting required a "minimum 1-2 years experience involving storm sewer and drain construction, maintenance and water quality activities or *equivalent*" experience.  (Resp., Ex. HH)(italics added)

Aboubaker possessed associate degrees in mechanical engineering and mechanical engineering technology and a heating and cooling certificate.  Aboubaker held various positions with Washtenaw County beginning in 1991, including as a bus driver, a high speed copier operator, mail

courier, computer operator, skills trade assistant, maintenance tech I and II and warehouse clerk. There is no dispute that Aboubaker was Union member.

The Court finds Aboubaker submitted sufficient evidence to create a genuine issue of material fact to show that he was qualified for the position. With Aboubaker's educational background in engineering and working in various positions with Washtenaw County since 1991, he may have sufficient experience to be qualified as a drain inspector. Aboubaker's knowledge of mechanical engineering, heating and cooling and maintenance technician, which includes knowledge of building and plumbing issues, could be transferred to the drain inspector position and could be considered as "equivalent" as noted in the Drain Inspector Job Summary posting. Aboubaker, a Union member, was not allowed to interview for the position, yet Ms. Shannon Moody, a white non-union member, was allowed to interview for the position, even though she was did not meet the qualifications of the drain inspector position. (Resp., Ex. GG)

### b. Qualified as Maintenance Tech II Position

Washtenaw County argues that Plaintiff was not qualified for the Maintenance Tech II position because he failed to train or test for the new Maintenance Tech II re-classification, despite being given multiple opportunities to train and test for the classification. Washtenaw County asserts that the Union and the County agreed to implement performance testing in 2004 to classify employees as Maintenance Tech I, II or III.

In his response, Aboubaker admits that this fact falls outside the limitations period and is not the basis of his claims. He addresses the facts asserted by Washtenaw County for background purposes only. Aboubaker asserts that contrary to the Washtenaw County Defendants' assertion that the Union and the County entered into a Letter of Understanding regarding testing, said letter

14

submitted to support their argument was not signed.  In its reply brief, Defendants submitted a signed Letter of Understanding.

Because Aboubaker admits that he has no claim regarding his reclassification from Maintenance Tech II to Maintenance Tech I, the Court will not address this issue, except to indicate that Aboubaker, if relevant and admissible, may present evidence regarding this fact at trial for background purposes.

### c.        Qualified as Maintenance Tech I Position

At the time Aboubaker was terminated, he was classified as a Maintenance Tech I.  The Washtenaw County Defendants argue that at the time of his termination, he was not qualified as a Maintenance Tech I because he was not performing his job at a level that met Washtenaw County's legitimate expectations.  They argue that Aboubaker faced repeated instances of discipline for insubordination and poor performance beginning in early 2007.

Aboubaker responds that the disciplinary issues do not show that he was not qualified for the Maintenance Tech I position at the time he was terminated.  He asserts that these were merely reasons for Washtenaw County to terminate him from his job.

The Court finds that the Washtenaw County Defendants' reason that Aboubaker was terminated because of various disciplinary actions and poor performance go to the "legitimate business reason" prong of the analysis, and not as to the *prima facie* elements of a discrimination action.  As argued by the Washtenaw County Defendants in their motion, Aboubaker "met the requirements for the Maintenance TECH I position" and "was properly classified as a Maintenance Tech I." (Motion, p. 24)  By their own admission, Aboubaker was qualified as a Maintenance Tech I classification.  Aboubaker has met this third element of a *prima facie* case.

### d.    Comparable

The Washtenaw County Defendants argue that Aboubaker has not identified a comparable to meet the fourth element.  Aboubaker responds he has identified a comparable, Moody, a white female as to the application for the Drain Inspector position.

An employee whom a plaintiff seeks to use as a comparable must be similarly-situated in "all of the relevant respects." *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998).  The failure to identify a similarly situated employee who was treated more favorably than plaintiff is fatal to the plaintiff's claim under a disparate treatment theory.  *Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir. 1992).  The similarly situated employee must have the same supervisor, be subject to the same standards and engaged in a similar conduct to plaintiff.  *Id.*

The Court finds Aboubaker has submitted sufficient evidence in identifying Moody as the comparable to Aboubaker in his application for the Drain Inspector position.  They both applied for the same position wherein Harris was the decision maker.  The Drain Inspector job posting applied to the applicants.  Aboubaker and Moody engaged in comparable conduct–applying for the Drain Inspector position.  Aboubaker has submitted sufficient to create a genuine issue of material fact that he was discriminated against in not being allowed to interview for the Drain Inspector position.

Aboubaker, however, does not identify a comparable as to his termination from the Tech I position.  Aboubaker's response fails to identify any employee in the same position and worked for the same supervisor at the time of his termination who was treated more favorably than Aboubaker.  Aboubaker's discrimination claim as to his termination from his Tech I position must be dismissed.

### e.    Legitimate Business Reason/Pretext

The Washtenaw County Defendants argue that Aboubaker was not qualified for the Drain

16

Inspector position, which is the basis for its business reason for not hiring Aboubaker. Robert Dancer, the individual hired for the position, previously worked in the Field Services Department performing storm sewer and drain construction activities and Aboubaker had not.

This is the same reason the Washtenaw County Defendants presented in its argument that Aboubaker was not qualified for the position. For the reasons set forth above, there remains a genuine issue of material fact that Aboubaker had sufficient "equivalent" experience to apply for the position, which applies to the Washtenaw County Defendants' argument that they had a legitimate business reason not to allow Aboubaker to interview for the position.

As to pretext, the Washtenaw County Defendants argues Aboubaker failed to present "affirmative evidence" of pretext. Because Defendants' business reason for not allowing Aboubaker to interview for the position is the same as their argument that Aboubaker was not qualified for the position, Aboubaker's argument that this reason was mere pretext because he was qualified for the position is sufficient to create a genuine issue of material fact on this issue.

### 2.     Remaining Claims of Discrimination

For the reasons set forth above, the only remaining discrimination claim set forth in Counts I, III (individual Defendants only) V, VI, IX and X is the claim that Aboubaker was discriminated against when he was not allowed to interview for the Drain Inspector position. Aboubaker's discrimination claims regarding the demotion from Tech II to Tech I and termination from the Tech I position are dismissed.

### D.     Retaliation Claims, Counts II and XI

The Washtenaw County Defendants also seek to dismiss the retaliation claims. Aboubaker responds that there are genuine issues of material fact as to his retaliation claims.

The elements of a *prima facie* case of under Title VII and the ELCRA retaliation claims are the same: 1) that plaintiff engaged in an activity protected by Title VII or ELCRA; 2) that the defendant knew of this exercise of plaintiff's protected rights; 3) that defendant consequently took an employment action adverse to plaintiff; and 4) that there is a causal connection between the protected activity and the adverse employment action. *Balmer v. HCA, Inc.,* 423 F.3d 606, 613-14 (6th Cir. 2005); *Abbott v. Crown Motor Co., Inc.,* 348 F.3d 537, 542 (6th Cir. 2003). Once a *prima facie* retaliation claim is established, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. *Spengler v. Worthington Cylinders,* 615 F.3d 481, 492 (6th Cir. 2010). The burden then shifts back to the plaintiff to show the stated reasons were mere pretext to mask retaliation. *Id.*

Protected activities include: opposition to any unlawful employment practice, or, making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding or hearing in connection with an unlawful employment practice. 42 U.S.C. § 2000e-3(a). Causation can be proven indirectly through circumstantial evidence such as suspicious timing. *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 523, 525 (6th Cir. 2008). Temporal proximity between an assertion of Title VII rights and a materially adverse action, is sufficient to establish the causal connection element of a retaliation claim where an adverse employment action occurs very close in time after an employer learns of a protected activity. *Id.* at 525. Where the nexus is not "very close," the Sixth Circuit has declined to find a causal connection based on timing alone. *Id.* at 523. In such a case, the plaintiff must proffer additional evidence of retaliatory conduct to establish a causal connection between the protected activity and the adverse employment action. *Little v. BP Exploration & Oil Co.,* 265 F.3d 357, 364 (6th Cir. 2001). A combination of evidence may include

other employees' fear of retaliation, repeated comments regarding discipline, atmosphere where a plaintiff's activities were scrutinized more carefully than those of comparably situated employees, both black and white, more unwarranted criticism of plaintiff's work, and more frequent disciplinary writeups of plaintiff for trivial matters.  *Id.*

Aboubaker's response identifies two protected conduct:   Aboubaker's reporting of discrimination as part of an internal investigation and filing of an EEOC action.  (Resp. p. 35)  The internal investigation involved a complaint of discrimination against Defendant Shirley by Mr. Scribling on February 22, 2005.  As part of the investigation, Aboubaker was interviewed and indicated that there was racism in the Facilities Department.  (Resp. Ex. V)  Aboubaker's retaliation claims based on the 2005 internal investigation are time-barred under ELCRA and Title VII.  A claim for violation under ELCRA must be brought within three years from the date of injury.  *Magee v. DaimlerChrysler Corp.,* 472 Mich. 108, 113 (2005); M.C.L. § 600.5805(10).  The instant action was filed in 2011, well outside of the three years' limitation period.  A plaintiff claiming a Title VII violation must file an administrative charge within 300 days of the event.  42 U.S.C. § 2000e-5(e)(1); *Nichols v. Muskingum College,* 318 F.3d 674, 679-80 (6th Cir. 2003).  Aboubaker did not file an EEOC charge as to the 2005 internal investigation.

As to Aboubaker's termination from his employment, although he asserts he filed the EEOC charge prior to his termination, the evidence and his testimony shows otherwise.  The Washtenaw County Defendants assert Aboubaker was terminated before he filed his EEOC complaint.  (Motion, Ex. HH; Aboubaker Dep. 60)  Aboubaker was terminated on July 17, 2008.  Aboubaker signed his Charge of Discrimination with the EEOC the day after on July 18, 2008 and he so testified at his deposition.  *Id.*  It appears from the date stamp that the EEOC received the charge on July 23, 2008.

19

(Motion, Ex. HH)  Aboubaker submitted a copy of an EEOC Intake Questionnaire which he signed on June 30, 2008.  (Resp., Ex. C)  However, there is no evidence that he had filed this Questionnaire with the EEOC prior to filing the EEOC charge.  Although not as clear as the date stamp on the EEOC charge, it appears that the EEOC Intake Questionnaire was received by the EEOC on July 23, 2008, the same date as the EEOC charge.  Because Aboubaker did not file his EEOC charge until after he was terminated, Aboubaker cannot show that his termination on July 17, 2008 was in retaliation of the filing of an EEOC charge which was signed on July 18, 2008 and received by the EEOC on July 23, 2008.  Aboubaker's retaliation claims must be dismissed.

### E.    Hostile Work Environment, Counts VII and XII

A plaintiff must establish a *prima facie* case of discrimination based on a hostile environment by showing that he:  1) was in a protected class; 2) was subject to unwelcomed harassment; 3) the harassment was based on his status as a protected individual; 4) the harassment unreasonably interfered with the plaintiff's work performance by creating an environment that intimidating, hostile and offensive; and 5) the employer was liable for the harassing conduct.  *Clay v. United Parcel Serv., Inc.,* 501 F.3d 695, 706 (6th Cir. 2007).

Aboubaker identifies comments made by Defendant Farrell in 2006 or 2007 that "al-Quada is the group that supposedly Bin Laden created."  (Aboubaker Dep., pp. 26-27)  Comments by other employees were made in 2003 or 2004.  These comments are outside the limitations period of three years under ELCRA and the 300 day limitation period under Title VII.  These comments cannot form a basis for a hostile work environment claim filed in 2011.  Aboubaker has not submitted any evidence that he told any managerial employee of any harassing conduct within the time limitations period.  Aboubaker's hostile work environment claims must be dismissed.

III.    **CONCLUSION**

For the reasons set forth above, the only remaining discrimination claim set forth in Counts I, III (individual defendants), V, VI, IX and X is the claim that Aboubaker was discriminated against when he was not allowed to interview for the Drain Inspector position.  All other claims are DISMISSED.

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment **(Nos. 32 and 36, 10/5/2012)** is **GRANTED IN PART and DENIED IN PART** as more fully set forth above.  The discrimination claims remain under Counts I, V, VI, IX and X as to Plaintiff's claim he was discriminated against when he was not allowed to interview for the Drain Inspector position.

IT IS FURTHER ORDERED that the following counts are **DISMISSED** with prejudice: Retaliation, 42 U.S.C. § 1981 (Count II); Violation of Equal Protection Clause, 42 U.S.C. § 1983 (Count III) as to Defendant Washtenaw County only; First Amendment Retaliation, 42 U.S.C. § 1983 (Count IV); Retaliation, Elliot-Larsen Civil Rights Act (Count VII); Hostile Work Environment, Elliot-Larsen Civil Rights Act (Count VIII); Retaliation, Title VII (Count XI); and, Hostile Work Environment, Title VII (Count XII).

IT IS FURTHER ORDERED that a Status Conference be held in this matter on **Monday, October 28, 2013, 3:00 p.m.** to set a Final Pretrial Conference and Trial dates.


                    S/Denise Page Hood
                    Denise Page Hood
                    United States District Judge

Dated:  September 20, 2013

21

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 20, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager