# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ALI ABOUBAKER,

      Plaintiff,                    Case No. 11-13001

v.                               HONORABLE DENISE PAGE HOOD

COUNTY OF WASHTENAW,

      Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND DENYING MOTION FOR NEW TRIAL AND MODIFICATION OF JUDGMENT

## I.     BACKGROUND

This matter is before the Court on a Renewed Motion for Judgment as a Matter of Law and Motion for New Trial and Modification of Judgment filed by the remaining Defendant County of Washtenaw. A jury trial began in this matter on February 18, 2014. On February 27, 2014, the jury rendered its verdict and awarded Plaintiff Ali Aboubaker $1,185,520.10 in damages. (Verdict Form, Doc. Nos. 67, 71; Judgment, Doc. No. 68)

Washtenaw County asserts that Aboubaker should have presented evidence of

intentional discrimination and that the evidence at trial failed to establish such. Washtenaw County further asserts that the jury's verdict that Washtenaw County intentionally discriminated against Aboubaker is against the weight of the evidence, that the trial court made erroneous evidentiary rulings, that the jury was not properly charged regarding damages, and that the jury award should be modified because of insufficient evidence regarding compensatory damages. Responses and replies were filed.

## II.    RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

### A.    Standard

Motions for Judgment as a Matter of Law are governed by Rule 50(a) of the Rules of Civil Procedure which provides:

> **(a)    Judgment as a Matter of Law.**
> (**1**)    *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
> (**2**)    *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Fed. R. Civ. P. 50(a).  If the court does not rule on the motion for judgment as a matter of law after the close of all the evidence, the court is considered to have submitted the action to the jury.  Fed. R. Civ. P. 50(b).  The motion may be renewed by filing a motion no later than 28 days after the judgment has been entered.  Fed. R. Civ. P. 50(b).  Failure to make a pre-verdict motion for judgment as a matter of law under Rule 50(a) precludes any post-verdict motion under Rule 50(b) and any such claim is waived.  *Sykes v. Anderson,* 625 F.3d 294, 304 (6th Cir. 2010); *American and Foreign Ins. Co., v. Bolt,* 106 F.3d 155, 160 (6th Cir. 1997).

Judgment as a matter of law is appropriate when "viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party."  *Tisdale v. Federal Express, Corp.,* 415 F.3d 516, 527 (6th Cir. 2005); *Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir. 1999).  "The evidence should not be weighed, and the credibility of the witnesses should not be questioned. The judgment of this court should not be substituted for that of the jury; instead, the evidence should be viewed in the light most favorable to the party against whom the motion is made, and that party given the benefit of all reasonable inferences."  *Tisdale,* 415 F.3d at 530.  "[W]henever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that

reasonable minds would not differ" only then is it appropriate to take the case away from the jury.  *O'Neill v. Kiledjian*, 511 F.2d 511, 513 (6th Cir. 1975).

### B.    Intentional Discrimination

Washtenaw County argues that, at trial, Aboubaker must have proven intentional discrimination and that the *McDonnell Douglas* burden-shifting framework is no longer relevant at trial.  Aboubaker responds that the jury is allowed to consider the *McDonnell Douglas* framework and is one form of circumstantial evidence probative to the issue of intentional discrimination if the jury does not believe the defendant's explanation as to its reason for the acts against the plaintiff.

Washtenaw County argues that Aboubaker must show "intentional discrimination."  Washtenaw County asserts that Aboubaker cannot do so because Jeffrey Harms, the sole decision maker in this case, testified that Aboubaker's race, religion and national origin played no role in his decision not to interview Aboubaker. Washtenaw County claims that Aboubaker's failure to present evidence to the contrary establishes that Washtenaw County did not intentionally discriminate against Aboubaker and that it is entitled to judgment as a matter of law.  It appears that Washtenaw County is arguing that to show "intentional discrimination," a plaintiff must present "direct evidence" of intentional discrimination.

A plaintiff may establish a *prima facie* case of discrimination either by

4

presenting direct evidence of intentional discrimination by the defendant *or* by showing the existence of circumstantial evidence which creates an inference of discrimination. *Talley v. Bravo Pitino Rest., Ltd.,* 61 F.3d 1241, 1246 (6th Cir. 1995). In a "direct evidence" intentional discrimination claim, a plaintiff must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of race, religion or national origin (as in this case), but also that the employer acted on that predisposition. *Daugherty v. Sajar Plastics, Inc.,* 544 F.3d 696, 706-07 (6th Cir. 2008). "[G]eneral, vague, or ambiguous comments do not constitute direct evidence of discrimination because such remarks require a factfinder to draw further inferences to support a finding of discriminatory animus." *Id.* at 708.

The other method to establish intentional discrimination is the "indirect or circumstantial evidence" case where a plaintiff must establish a *prima facie* case under the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) burden-shifting framework. *Seeger v. Cincinnati Bell Telephone Co.,* 681 F.3d 274, 283 (6th Cir. 2012). Under the burden-shifting approach developed for Title VII cases in *McDonnell Douglas*, a plaintiff must establish a *prima facie* case and create a presumption of discrimination by showing by a preponderance of the evidence: (1) that he belongs to a protected class; (2) that he was subjected to an adverse employment action; (3) that he was qualified for the job; and (4) that he was treated

5

differently from similarly situated employees from a non–protected class. *McDonnell Douglas*, 411 U.S. at 802; *Wilcoxon v. Minnesota Mining & Mfg. Co.*, 235 Mich. App. 347, 361 (1999). If a plaintiff proves a *prima facie* case, the burden of persuasion shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802. Once the employer carries this burden, the burden then shifts back to plaintiff to prove, by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.*; *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991). To make a submissible case on the credibility of an employer's explanation, the plaintiff is required to show, by a preponderance of the evidence, *either*: 1) the proffered reasons had no basis in fact; 2) that the proffered reasons did not actually motivate the adverse employment action; or, 3) that the proffered reasons were insufficient to motivate the adverse action. *Briggs v. Potter,* 463 F.3d 507, 515 (6th Cir. 2006).

If the jury does not believe a defendant's proffered reason for its adverse employment action, the jury must also believe that it was because the defendant intentionally discriminated against the plaintiff. *Noble v. Brinker Int'l, Inc.,* 391 F.3d 715, 726 (6th Cir. 2004). Contrary to Washtenaw County's argument that the *prima facie* case "drops out of the picture" at trial, *Noble* did not so hold. Instead, *Noble*

noted that the "elements of a *prima facie* case frequently are still relevant after the case has gone to the jury." *Id.* at 727 (quoting *Brown v. Packaging Corp. of America*, 338 F.3d 586, 597 n. 3 (6th Cir. 2003)).  A court may not, after a trial on the merits, grant judgment as a matter of law merely because the plaintiff failed to establish a *prima facie* case, but when the indirect method of proof is the only remaining avenue by which a plaintiff can establish a claim of intentional discrimination, it is necessary and appropriate for a court to evaluate the evidence supporting the plaintiff's *prima facie* case.  *Id.*  Although the Sixth Circuit has held that "after a trial on the merits, a reviewing court should not focus on the elements of the *prima facie* case but should assess the ultimate question of discrimination," it has "nevertheless, recognized that whether the plaintiff made out of a *prima case* may be 'relevant to our review of that ultimate question.'" *Moore v. Freeman*, 355 F.3d 558, 562 (6th Cir. 2004)(citations omitted); *see also, Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 143 (2000)(quoting, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981))(Although the presumption of discrimination "drops out of the picture" once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's *prima facie* case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual.).

7

Washtenaw County argues that race, religion and national origin were not the reasons why Aboubaker was not interviewed, but that Aboubaker was not qualified for the Drains Inspector position.  There is sufficient evidence for the jury to discredit Washtenaw County's reason given the evidence presented at trial as to Aboubaker's education and experience, compared to the individuals Washtenaw County interviewed.  It was a question of fact for the jury that Washtenaw County's proffered reason had no basis in fact or that its proffered reason did not actually motivate the failure to interview Aboubaker.  Aboubaker presented evidence that he was qualified and the only union member on the list generated by Washtenaw County as to the position, and yet Washtenaw County interviewed another candidate who was not a union member and was not qualified.  Aboubaker presented Exhibit 4, a list of candidates, which shows that Washtenaw County interviewed another candidate who did not meet the minimum requirements.  Evidence at trial showed that Washtenaw County's policy and the union agreement indicate that Aboubaker was to be given consideration and preference.  This evidence could support the jury's rejection of Washtenaw County's proffered reason for failing to interview Aboubaker, especially since another candidate was interviewed who did not have the minimum requirements.  Washtenaw County's argument that "direct evidence" is required to show "intentional discrimination" is without merit in that a jury may infer from all the evidence

8

presented, not just based on Harm's testimony, whether Aboubaker was subject to intentional discrimination by Washtenaw County.

The Court cannot weigh the evidence or judge the credibility of the witnesses in a renewed motion for judgment as a matter of law.  Viewing the light most favorable to Aboubaker, he has presented sufficient evidence to support the jury's finding that Washtenaw County's proffered reason for not interviewing Aboubaker was merely pretext and that Aboubaker was intentionally discriminated by Washtenaw County.  Washtenaw County's Renewed Motion for Judgment as a matter of law is denied.

## III.   MOTION FOR NEW TRIAL AND MODIFICATION OF JUDGMENT

### A.     Motion for New Trial

#### 1.     Standard of Review

Rule 59 of the Rules of Civil Procedure provides that a new trial may be granted to all or any of the parties and on all or part of the issues for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.  Fed. R. Civ. P. 59.  Specific grounds for new trial have included:  the verdict is against the weight of the evidence; the damages are excessive; for other reasons the trial was not fair; there were substantial errors in the admission or rejection of evidence; the giving or refusal of instructions were in error; and

9

misconduct of counsel. *Clark v. Esser*, 907 F.Supp. 1069, 1073 (E.D. Mich. 1995); *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749 (6th Cir. 1980); *Static Control Components, Inc. v. Lexmark Int'l, Inc.,* 697 F.3d 387, 414 (6th Cir. 2012). The granting or denial of a new trial is purely within the discretion of the trial court and will not be reversed except upon a showing of abuse of discretion. *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989). The trial court has broad discretion in deciding a motion for a new trial to prevent a miscarriage of justice. *Clark*, 907 F.Supp. at 1073; *City of Cleveland*, 624 F.2d at 756; *Fryman v. Federal Crop Ins. Corp.*, 936 F.2d 244, 248 (6th Cir. 1991). If there is no motion for judgment as a matter of law made on the question of the sufficiency of the evidence, such is also not available as a ground for a motion for new trial. *Southern Ry. Co. v. Miller,* 285 F.2d 202, 206 (6th Cir. 1960). However, such a motion can be viewed as one claiming that the verdict was against the great weight of the evidence, which can be considered by the trial court as a motion for new trial under Rule 59. *Id.*

In considering a motion for new trial on the ground that the verdict is against the weight of the evidence, the court cannot set aside the verdict simply because it believes another outcome is more justified. *Denhof v. City of Grand Rapids,* 494 F.3d 534, 543-44 (6th Cir. 2007). The court must accept the jury's verdict and can only overturn the verdict if the verdict was against the weight of the evidence and the jury

verdict was unreasonable. *Id.* Courts are not free to reweigh the evidence and set aside the jury verdicts merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable. *Bruner v. Dunaway,* 684 F.2d 422, 425 (6th Cir. 1982).

### 2.    Great Weight of the Evidence

Washtenaw County argues that the jury's verdict that it intentionally discriminated against Aboubaker is against the great weight of the evidence. Washtenaw County claims that the sole decision maker, Harms, testified that his decision not to interview Aboubaker was not based on his race, religion or national origin. Washtenaw County asserts that Aboubaker failed to present any evidence to the contrary. Harms testified that he did not review Aboubaker's personnel file, did not know of Aboubaker or his religion or race, that he had no knowledge of Aboubaker's prior positions or then-current job title. Harms testified that Aboubaker did not meet the qualifications for the position based solely on the qualifications listed on the application submitted by Aboubaker. Washtenaw asserts that even though the evidence at trial established a conflict between Aboubaker and his then-supervisor, there is no evidence that Harms communicated with Aboubaker's supervisor regarding Aboubaker.

Aboubaker responds that he did not acknowledge at trial that Harms did not

11

discriminate against him based on his race, religion or national origin. Aboubaker only acknowledged that he "heard" Harms testify to such at trial. Aboubaker testified that he was unable to look into Harms' heart and mind, but that he did not admit that Harms' reason for not interviewing him did not involve Aboubaker's race, religion or national origin. Aboubaker claims that the circumstantial evidence presented at trial supports the jury's verdict.

The Court finds that the jury's verdict was reasonable, is supported by the evidence presented at trial and that there is no great weight of evidence to overturn the verdict. Washtenaw County focuses only on Harms' testimony at trial, which Aboubaker admits to hearing, but not to the conclusion that Harms did not interview because of Aboubaker's race, religion or national origin. The jury had the opportunity to judge Harms' testimony and credibility which, based on the other circumstantial evidence presented, the jury apparently did not believe. The Court cannot weigh the evidence or the credibility of the witnesses in reviewing a Motion for New Trial.

As noted above, the weight of the evidence supports the jury's finding that Washtenaw County intentionally discriminated against Aboubaker. Aboubaker presented evidence that it was the Human Resources Department who initially made the determination that Aboubaker did not meet the minimum requirements for the position. Evidence was presented as to how Aboubaker's then-supervisor Farrell

placed negative performance evaluations in his personnel file which was accessed by the Human Resources Department, who then presented Harms with the list of candidates for the position. Diane Heidt, the Human Resources Director, testified that she knew of Aboubaker and that he kept his beard and wore a head covering for religions reasons. Heidt testified that Aboubaker's negative personnel evaluations by his then-supervisor, Richard Farrell, were a strike against Aboubaker.

Evidence was presented that the Collective Bargaining Agreement with Washtenaw County provided that union members were given preference for certain positions, but yet Aboubaker, a union member, was not interviewed for the position, even though another candidate who was not a union member was interviewed for the position. Heidt testified that if Aboubaker would have been designated as minimally qualified for the position, he would have been given the position because of his union membership. She testified that it was Human Resources who made the determination that Aboubaker was not minimally qualified for the position, which was then communicated to Harms, the designated decision maker in this case, who did not grant Aboubaker an interview. The lack of an interview is another basis for a finding of pretext and the jury could have made such an inference based on the evidence presented, which this Court will not discount. *Kline v. Tenn. Valley Authority,* 128 F.3d 337, 351 (6th Cir. 1997).

Even though Harms may have testified that his decision not to interview Aboubaker for the position was because Aboubaker was deemed not qualified, the decision designating Aboubaker as such was initially made by the Human Resources Department. The jury could have inferred that Washtenaw County's reason for not interviewing Aboubaker was not the true reason for its action. The evidence presented at trial was that the Human Resources Department initially determined whether Aboubaker met the minimum qualifications for the position. There was evidence of negative evaluations by Aboubaker's then-supervisor in his personnel file. The relationship between Abouabker and his then-supervisor was relevant to Harms' ultimate decision not to interview Aboubaker because it was the Human Resources Department who made the determination of Aboubaker's qualifications. The jury rejected Washtenaw County's proffered explanation as mere pretext that Harms did not act with discriminatory intent in light of the other evidence before the jury and the inference drawn from all the evidence presented at trial.

The Court must accept the jury's verdict and can only overturn the verdict if the verdict was against the weight of the evidence and the jury verdict was unreasonable. The Court finds that jury verdict was reasonable and was not against the great weight of the evidnece presented at trial. The jury had the opportunity to judge the credibility of Washtenaw County officials and Aboubaker. Based on the all of the evidence

14

presented at trial, the jury chose to believe Aboubaker's theory and arguments.  The Court will not overturn the jury's verdict.

### 3.    Evidentiary Rulings

Washtenaw County argues that the Court erred in allowing evidence of Aboubaker's demotions and applications for promotions other than the position at issue.  The Court had ruled that should Washtenaw County argue at trial that Aboubaker was not qualified for the position, the prior personnel action evidence would be relevant.  Washtenaw County claims that prior personnel action against Aboubaker was not relevant to Harms' decision not to interview Aboubaker since Harms did not consult with anyone else regarding his decision not to interview Aboubaker.

"Broad discretion is given to the district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overturned." *United States v. Jackson-Randolph,* 282 F.3d 369, 376 (6th Cir. 2002).  As noted above, the evidence at trial showed that it was the Human Resources Department who made the initial determination that Aboubaker was not qualified for the Drains Inspector position.  Any evidence relating to what was in Aboubaker's personnel file and any evidence rebutting what was placed in Aboubaker's personnel file, was relevant to Washtenaw County's determination that

Abouabekr was not qualified for the position. Although Washtenaw County argues in this portion of its motion that it was not going to argue at trial that Aboubaker was not qualified for the position, such argument was not supported at trial, in light of the evidence that Aboubaker was designated as not qualified on the list of candidates given to Harms. The heart of Washtenaw County's argument at trial was that Harms knew nothing of Aboubaker so that his decision not to interview him for the position was not based on any discriminatory reason. However, the evidence presented at trial, as testified to by Washtenaw County's Human Resources Director, was that it was the Human Resources Department who compiled the list of applicants and who made the determination that Aboubaker was not minimally qualified for the position. The Court declines to find its decision was erroneous in allowing other evidence pertaining to Aboubaker's treatment by other Washtenaw County personnel. Such evidence was relevant on the issue of whether Aboubaker was qualified for the position and Washtenaw County's reason in initially determining Aboubaker not qualified for the position.

### 4.     Jury Charge re Potential Damages

Washtenaw County argues that the Court failed to give its proposed jury instruction that Aboubaker's loss of earnings is tolled because Aboubaker was terminated due to insubordination and failed to mitigate his damages. Washtenaw

16

County argues that because Aboubaker was terminated for insubordination his damages on back pay should be limited.

Aboubaker responds that Washtenaw County is attempting to litigate Aboubaker's termination through the back door after the Court ruled in its order regarding summary judgment that the only remaining issue was the discrimination claim for failure to interview Aboubaker for the Drain Inspector position. The instruction sought by Washtenaw County included language that damages would be limited because Aboubaker was terminated for violating a work rule. Aboubaker claims the proposed jury instruction was brought under the guise of a mitigation instruction and was properly rejected by the Court.

The trial court has broad discretion in giving or declining to give jury instructions. *United States v. Tasis,* 696 F.3d 623, 627 (6th Cir. 2012). The proposed instruction sought by Washtenaw County was as follows:

> If a plaintiff suffers a willful loss of earnings, the employer's back pay liability is tolled. A plaintiff's duty to mitigate damages includes the obligation to make reasonable and good faith efforts to maintain his job. This means that plaintiff must act reasonably and responsibly in accordance with employer rules. An employer's discharge for cause due to his willful violation of company rules will toll back pay. Indeed, if the plaintiff does not make reasonable and good faith efforts to maintain his job, the plaintiff should be said to have voluntarily removed himself from the job market or the workplace and forfeited his right to back pay.

17

(Motion, Doc. No. 86, Pg ID 2618)  The Court finds the proposed instruction was not relevant to the case.  The Court, having granted Defendants' Motion for Summary Judgment on the wrongful termination claim, finds that this instruction relating to termination for violation of company rules is not relevant.  Giving this instruction would have been prejudicial since the issue of Aboubaker's termination was not before the jury.  It is noted that the Court instructed the jury on mitigation of damages, without the language that Aboubaker was terminated for breaking rules.  (Doc. No. 73, Pg ID 1809) The Court declines to find error in denying Washtenaw County's proposed special jury instruction regarding violation of company rules as mitigation of damages.

### B.    Modification of Damages

Washtenaw County argues that the Court has the inherent power to correct its mistake of not appropriately instructing the jury regarding the effect of Aboubaker's subsequent lawful termination on his damages.  Washtenaw County argues that the jury's award of back pay and front pay totaling $935,519.10 must be modified to reflect Aboubaker's lawful termination three months after the denial to interview for the position.  Washtenaw County further argues that the $250,000 damages award for emotional distress was tied to Aboubaker's termination and not to the denial to interview for the position.

Aboubaker responds that although Washtenaw County is arguing that this is not a wrongful termination case and that the jury award should have been cut off when Aboubaker was terminated, but the instructions Washtenaw County proposed as discussed above, would have had the effect that the jury determine the lawfulness of Aboubaker's termination.  Aboubaker claims Washtenaw County is arguing out of "both sides of its mouth."  (Br., Doc. No. 89, Pg ID 2696) Aboubaker asserts that the evidence at trial supports the back and front pay awards.  Aboubaker further asserts that as to the emotional distress non-economic damages award, that award was also supported by the evidence.  He argues that it was Washtenaw County who opened the door as to its portrayal of Aboubaker as an insubordinate employee who was terminated for insubordinate acts.  Aboubaker claims that Washtenaw County cannot now argue that he went out of his way to tie his emotional distress to his termination.

"A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive." *Fuhr v. School Dist. of City of Hazel Park,* 364 F.3d 753 (6th Cir. 2004)(quoting *Farber v. Massilon Bd. of Educ.,* 917 F.2d 1391, 1395 (6th Cir. 1990)).   Back pay compensates a plaintiff for lost salary and benefits up until the time of the verdict. *Skalka v. Fernal Env. Restoration Mgt. Corp.*, 178 F.3d 414, 426 (6th Cir. 1999).  "A back pay award should make the claimant whole, that

19

is, to place him in the position he would have been in but for the discrimination." *Rasimas v. Mich. Dep't of Mental Health*, 714 F.2d 614, 626 (6th Cir. 1983). Courts have awarded back pay to claimants alleging claims of failure to hire, interview or promote. *See, Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975); *Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1170 (6th Cir. 1996); *Storey v. City of Sparty Police Dep't*, 667 F.Supp. 1164, 1173 (M.D. Tenn. 1987).

Future damages or front pay is compensation for "the post-judgment effects of past discrimination." *Shore v. Federal Express Corp.,* 777 F.2d 1155, 1158 (6th Cir. 1985). "While the determination of the precise amount of an award of front pay is a jury question, the initial determination of the propriety of an award of front pay is a matter for the court." *Arban v. West Publishing Corp.,* 345 F.3d 390, 406 (6th Cir. 2003). The district court's determination of whether an award of front pay is appropriate must ordinarily precede its submission of the case to the jury. *Roush v. KFC Nat'l Management Co.,* 10 F.3d 392, 398-99 (6th Cir. 1993). Awards of front pay must be guided by consideration of certain factors, including: an employee's duty to mitigate; the availability of employment opportunities; the period within which one by reasonable efforts may be re-employed; the employee's work and life expectancy; the discount tables to determine the present value of future damages; and other factors that are pertinent on prospective of damage awards. *Id.* at 399. In a Title VII case,

the defendant bears the burden of establishing that the plaintiff lacked diligence in mitigating damages by showing that there were substantially equivalent positions available and that the plaintiff did not diligently pursue those positions. *Madden v. Chattanooga City Wide Service Dep't.,* 549 F.3d 666, 680 (6th Cir. 2008).

Damages for mental and emotional distress will not be presumed and must be proved by competent evidence. *Moorer v. Baptist Memorial Health Care System,* 398 F.3d 469, 485 (6th Cir. 2005). Emotional injury may be proven without medical support. *Id.* Such may be proved by a plaintiff's own testimony, along with the circumstances of a particular case. *Id.* Even if a plaintiff recovered only $16,000 in economic damages, but was awarded $300,000 for emotional distress, denial of motion for remittitur was affirmed by the appellate court. *Id.* (citing *Miller v. Alldata Corp.,* 14 F. App'x 457, 467 (6th Cir. 2001)).

The Court finds Washtenaw County's argument without merit that Aboubaker's award for back pay and front pay should be "cut off" because he was terminated for insubordination and there was no particularly reprehensible conduct related to the decision not to interview Aboubaker. As set forth above, a back pay award makes a plaintiff whole, to place the plaintiff in the same position but for the discrimination. Washtenaw County's argument that because the case was a failure to interview claim, not a termination claim, Aboubaker was not entitled to back pay or front pay beyond

the date of his termination is not supported by the law.  There is no "cut off" point as argued by Washtenaw County just because this was a failure to interview case as opposed to a termination case.  Sufficient evidence was presented at trial to support the jury's award of economic damages in the amount of $935,519.10.  Washtenaw County's Human Resources Director testified that if Aboubaker would have obtained the position, his economic damages would be in excess of $1,000,000.

As to the non-economic damages award for emotional distress, the Court finds that the award of $300,000 was not excessive.  The evidence presented at trial, including Aboubaker's testimony, supports the jury's award.  Aboubaker testified that he was being discriminated against because of his religious beliefs.  It was Washtenaw County who argued that Aboubaker was terminated because of insubordination. Testimony regarding how Aboubaker was being treated by Washtenaw County and its employees show that their actions were hurtful to Aboubaker and that he suffered significant emotional distress because of their actions.

Reviewing the jury's economic and non-economic damages award based on the evidence presented at trial and in the light most favorable to Aboubaker, the Court finds that the jury's monetary award was not so excessive to require modification. The request to modify the monetary verdict is denied and the jury's award will not be remitted.

22

**IV.   CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that Defendant County of Washtenaw's Renewed Motion for

Judgment as a Matter of Law **[Doc. No. 85]** is DENIED.

IT IS FURTHER ORDERED that Defendant County of Washtenaw's Motion

for New Trial and Modification of Judgment **[Doc. No. 86]** is DENIED.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  March 18, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of
record on March 18, 2015, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager